IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

LATOYA FOUNTAIN,

    Plaintiff,

v.

COASTAL HARDWARE AND
BUILDING SUPPLY, INC.,

    Defendant.

Civil Action No.   CV220-102

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES

COMES NOW, Latoya Fountain ("Plaintiff" or "Ms. Fountain"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA"), as well as various state laws.

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117, and 28 U.S.C. § 1367.

3.

Defendant Coastal Hardware and Building Supply, Inc. ("Defendant") does business in this judicial district.  Additionally, the unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a citizen of the United States of America and a resident of the State of Georgia.  Plaintiff is subject to the jurisdiction of this Court.

5.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant is a domestic corporation qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

7.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Terry K. Driggers, at 112 Riverway, Brunswick, GA 31520.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4).

9.

During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA.  Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

## ADMINISTRATIVE PROCEDURES

### 10.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on or about June 8, 2020.

### 11.

The EEOC issued a "Notice of Right to Sue" on September 10, 2020, entitling an action to be commenced within ninety (90) days of receipt of that notice.

### 12.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

### 13.

Ms. Fountain began working for Defendant through Randstad on January 28, 2019, as a Bookkeeper.

### 14.

In April 2019, Defendant hired Ms. Fountain as a full-time employee, where she continued in her role as Bookkeeper.

15.

Ms. Fountain shared the job duties of Bookkeeper with another employee, Deborah Westcott.

16.

In addition to her role as Bookkeeper, Ms. Fountain was also responsible for tasks typically carried out by a Human Resources employee.

17.

Ms. Fountain has a disability and/or perceived disability.

18.

Specifically, Ms. Fountain suffers from fibromyalgia, PTSD, and depression.

19.

In November 2019, Ms. Fountain began fielding complaints from other employees about Ms. Westcott.

20.

The complaints concerned Ms. Westcott's general harassment of them, which created a stressful environment for Plaintiff.

21.

Ms. Fountain notified Defendant's President, Jason Counts, of the complaints.

22.

Ms. Fountain also reported to Mr. Counts that she too had been having similar issues with Ms. Westcott.

23.

Defendant chose not to take action to stop Ms. Westcott's harassing behavior.

24.

From January 2020 through the end of her employment, Ms. Fountain regularly complained to Mr. Counts and Manager Perry Wiggins about the unnecessary stress in the workplace due to Ms. Westcott's conduct.

25.

By April 2020, Ms. Fountain's disabilities had been triggered by the stressful work environment, and Ms. Fountain had to seek additional medical treatment.

26.

When Ms. Fountain complained again to Mr. Counts about the harassment by Ms. Westcott on or about April 30, 2020, she explained to Mr. Counts how Ms. Westcott's ongoing harassment was triggering her disabilities.

27.

Ms. Fountain requested a reasonable accommodation of her disabilities which were triggered by the stress in the workplace.

28.

Specifically, Ms. Fountain suggested that her job duties be altered as to eliminate or limit her interaction with Ms. Westcott.

29.

Ms. Fountain also told Mr. Counts that she had a change in her medication for her disabilities, that the new medication temporarily affected her cognitive functioning, and that a change in her duties would help accommodate the transition.

30.

Mr. Counts said he would think about it.

31.

Ms. Fountain followed up with Mr. Counts regarding her request for a reasonable accommodation on May 6, 2020, and again the morning of May 8, 2020.

32.

During her lunch break on May 8, 2020, Ms. Fountain called a law firm to seek legal advice regarding her rights.

33.

Approximately an hour after she returned from her lunch break, Ms. Fountain was approached by Terry Driggers, owner of Defendant's parent company, Driggers Homes, Mr. Counts, Mr. Wiggins, and Nicholas "Cole" Marat.

34.

While Mr. Marat was filming Ms. Fountain on a camera phone, and in front of other employees, Mr. Driggers asked Ms. Fountain for her personal medical information.

35.

Mr. Driggers accused Ms. Fountain of speaking to an attorney while on the clock and told her that he would "see her in court."

36.

Mr. Driggers then terminated Ms. Fountain.

37.

Defendant certified to the Georgia Department of Labor that Ms. Fountain had been terminated because she was "unwilling to perform the duties of her job," which was untrue.

38.

Defendant's alleged reasoning for Ms. Fountain's termination was pretextual in that she never refused to perform any duties of her job; she asked for a reasonable accommodation of her disabilities.

39.

Prior to Ms. Fountain's complaint and request for reasonable accommodations of her disability, Defendant had never indicated that there were any concerns related to her job performance.

40.

Further proof in Defendant not having any issues with Ms. Fountain prior to her request for an accommodation is that days before Defendant terminated Ms. Fountain's employment, she had been given a raise.

41.

Defendant terminated Plaintiff because she had a record of a disability or because it regarded her as disabled or because she engaged in protective activity.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

42.

Plaintiff re-alleges paragraphs 13-41 as if set forth fully herein.

43.

Plaintiff has physical and mental health impaiments which substantially limit one or more major life activities including but not limited to concentrating, thinking and working.

44.

Plaintiff's physical and health impairments are "disabilities" within the meaning of the ADA, as amended.

45.

Defendant was aware of Plaintiff's disabilities.

46.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

47.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

48.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

49.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

50.

Defendant terminated Plaintiff's employment because of her accommodation requests.

51.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

52.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

53.

Defendant treated other employees outside Plaintiff's protected class differently.

54.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

55.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

56.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

57.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

58.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

59.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

60.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

61.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

62.

Plaintiff re-alleges paragraphs 13-41 as if set forth fully herein.

63.

Plaintiff has physical and mental health impairments which substantially limit one or more major life activities including but not limited to concentrating, thinking and working.

64.

Plaintiff's physical and mental health impairments are "disabilities" within the meaning of the ADA, as amended.

65.

Defendant was aware of Plaintiff's disabilities.

66.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

67.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

68.

Plaintiff requested that Defendant accommodate her disability by modifying her job duties to limit the interaction with a harassing co-worker, which was exacerbating her disabilities.

69.

Upon receiving Plaintiff's requests for an accommodation, Defendant failed to meaningfully engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

70.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

71.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

72.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

73.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

74.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

75.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

76.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

77.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

78.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

79.

Plaintiff re-alleges paragraphs 13-41 as if set forth fully herein.

80.

Plaintiff has physical and mental health impairments which substantially limit one or more major life activities including but not limited to concentrating, thinking and working.

81.

Plaintiff's physical and mental health impairments are "disabilities" within the meaning of the ADA, as amended.

82.

Defendant was aware of Plaintiff's disabilities.

83.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

84.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

85.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

86.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

87.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

88.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

89.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

90.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

91.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

92.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

93.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

94.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT IV:  INVASION OF PRIVACY

95.

Plaintiff re-alleges the paragraphs 13-41 as if set forth fully herein.

96.

The actions of Defendant give rise to the common law claim of Invasion of Privacy.

97.

Mr. Driggers unjustifiably intruded upon Plaintiff's right to privacy by unreasonably interfering with her seclusion when he demanded, in front of other employees and while being filmed, that she disclose her personal medical information.

98.

Defendant is responsible for Mr. Driggers' invasion of privacy because he is the owner of Defendant's parent company, Driggers Homes.

99.

As a direct and proximate cause of the actions of Defendant, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, and/or shame and embarrassment.  Plaintiff's damages have been experienced in the past, and they will continue in the future.

## COUNT V:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100.

Plaintiff re-alleges the paragraphs 13-41 as if set forth fully herein.

101.

Defendant's conduct was extreme and outrageous. Defendant intended to inflict severe emotional distress or knew that it was a high probability that the conduct would do so.

102.

Defendant's conduct actually caused Plaintiff severe emotional distress.

103.

Defendant is liable for all general and special damages proximately resulting from the intentional infliction of emotional distress upon Plaintiff.

## COUNT VI:  DEFAMATION

104.

Plaintiff re-alleges the paragraphs 13-41 as if set forth fully herein.

105.

Defendant intentionally made the following defamatory statements on Plaintiff's Georgia Department of Labor Separation Notice:  "Unwilling to perform the duties of her job."  This statement is false.

106.

The Separation Notice is written government record.

107.

Defendant knew the statement was false or acted with reckless disregard for the truth of the statement.

108.

Defendant acted in bad faith, with malice, spite, ill will, or some other wrongful motivation, and without belief in their conduct was proper or the statement made to the Georgia Department of Labor was correct.

109.

Defendant intentionally made the defamatory statements (or with reckless disregard) in order to cause harm to Plaintiff's professional reputation.

110.

As a result of Defendant's improper conduct, Plaintiff has been damaged substantially.

111.

Plaintiff has retained an attorney in order to prosecute this action and accordingly, is entitled to reasonable attorney fees and costs related thereto.

112.

In committing the acts herein mentioned, the Defendant acted arbitrarily, capriciously, maliciously and with reckless disregard for the rights of Plaintiff and accordingly, Plaintiff is entitled to punitive damages, in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff judgment as follows:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)      Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)      Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)      Reasonable attorney's fees and expenses of litigation;

(e)      Trial by jury as to all issues;

(f)      Prejudgment interest at the rate allowed by law;

(g)      Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h)      Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i)      All other relief to which she may be entitled.

Respectfully submitted the 25th day of September, 2020.

**BARRETT & FARAHANY**

 s/ *Adian R. Miller*       
Adian R. Miller
Georgia Bar No. 794647

*Attorney for Latoya Fountain*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
adian@justiceatwork.com